**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| SHARON MARIE ROGERS, | ) | CASE NO.: 1:24-cv-148 |
| | ) | |
| Plaintiff, | ) | JUDGE MICHAEL R. BARRETT |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE FARM FIRE & CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL APPRAISAL AND STAY LITIGATION: ORAL ARGUMENT REQUESTED**

## INTRODUCTION

The Parties in this matter fail to agree on the amount of Loss. State Farm attempts to place additional restrictions upon appraisal that simply do not exist in the Policy or have already been met. Primarily, State Farm contends that Plaintiff must somehow dispute the amount of Loss in a more extensive way than Plaintiff has already done. However, the Policy simply states that if the Parties fail to agree on the amount of Loss, either party may demand appraisal. The Parties are then required to proceed with the appraisal process. Plaintiff contends the amount of Loss caused by the March 25, 2023 storm is $214,871.20. State Farm has not agreed to this amount of Loss and therefore, the Parties "fail to agree on the amount of Loss." Accordingly, Plaintiff has complied with the Policy requirements

regarding a loss and the process for properly invoking appraisal and State Farm, per the terms of its own Policy, is required to participate in the appraisal of the amount of Loss.

Plaintiff requests only a determination of the amount of Loss and does not request a coverage determination. Accordingly, appraisal is the appropriate and required next step in this matter. Coverage determinations involve interpreting the Policy to determine if the damage is covered or not covered by the terms of the Policy. Rogers seeks to have the appraisal panel determine what is damaged by the storm, what repairs are necessary, and how much those repairs will cost. This determination does not require interpreting or even reading the Policy.

State Farm actually hits on the proper course of this matter. State Farm requests the Court reserve coverage issues for after the appraisal. Plaintiff agrees that the appraisal panel will not determine coverage and that the Court is the proper venue for coverage issues. The appraisal panel will determine what damage the storm caused. This will include determining the damage to the outside of the home as well as the interior damage caused by the storm. Further, State Farm (actually either party) is free to request the appraisal panel identify separately the amount of Loss associated with any category, including but not limited to, wind, hail, interior, exterior, providing repairs that result in a reasonably comparable appearance ("matching"), code-required repairs, subsequent damage from the storm (i.e. mold growth), or any other category of loss. Once the appraisal panel identifies the amount of Loss for the requested categories of coverage, State Farm is still free to make the argument that the Policy does not provide coverage for any of the categories, such as interior damage.

In the event the appraisal panel finds the storm caused interior damage (or any other requested category) and awards an amount of Loss for the category, even though State Farm has not provided any Policy support or reasoning why the interior damage caused by the storm would not be covered, State Farm is free to dispute that coverage and refuse to pay that category. The parties will then bring a declaratory/summary judgment requesting the Court to provide a legal analysis of the Policy, applicable statutes, and caselaw to determine the "categories of coverage," and include or exclude any categories in dispute. The Court will then determine which categories, if any, will be included as part of a final judgment on the case. Accordingly, the appraisal is appropriate to take place at this time and to identify the entire amount of Loss caused by the subject storm. The parties will then either resolve the matter or bring a legal coverage dispute to the Court for resolution.

## **ARGUMENT**

**I. ROGERS PROPERLY INVOKED APPRAISAL.**

Rogers properly invoked the appraisal process. As State Farm pointed out, the Policy provides for the following requirements in relation to appraisal:

SECTION I – CONDITIONS

4. Appraisal. If you and we fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only you or we may demand appraisal. A demand for appraisal must be in writing. You must comply with SECTION I – CONDITIONS, Your Duties After Loss before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

\*\*\*

> h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:
> (1) any other questions of fact;
> (2) questions of law;
> (3) questions of coverage;
> (4) other contractual issues; or
> (5) to conduct appraisal on a class-wide basis.

(Remick Aff. Ex. 3 at 25).

Rogers has complied with all requirements and properly triggered appraisal.

### a. The Parties Fail to Agree on the Amount of Loss

Rogers contends the amount of Loss is $214,871.20. (Remick Aff. Ex. 5). State Farm contends the amount of Loss is $3,490.68. (Remick Aff. Ex. 4). These positions have been exchanged and each side has been given an opportunity to accept the other side's position on the amount of Loss. However, the parties continue to "fail to agree on the amount of Loss."

### b. Plaintiff Demanded Appraisal.

On March 18, 2024, Rogers demanded appraisal, in writing, and identified her appraiser. (Remick Aff. Ex. 7).

### c. Plaintiff Complied with All Policies Requirements.

Plaintiff has complied with all of the Policy requirements following a loss. There are several requirements listed which Rogers has complied with, including exhibiting the property as often as State Farm requests, cooperating with the claim investigation, and promptly reporting the Loss. The only requirement that State Farm identifies in its Response is the requirement that Rogers provide an "itemized documentation of a specific

dispute as to the amount of Loss, identifying separately each item being disputed." Rogers complied with this requirement as well.

On November 20, 2023, Rogers provided State Farm with a detailed repair estimate. (Remick Aff. Ex. 5 (the estimate) and 6 (the email sending the estimate to State Farm)). The repair estimate is not a single number of the total amount of the claim. Rather, the repair estimate is a 197 line-item repair estimate that details exactly what repairs are necessary and their costs, which shows how Rogers get to a total amount of Loss of $214,871.20. State Farm's position provides for only $3,490.68 of repairs and the Parties do not agree to any of the line items of the other Parties' repair estimate. Accordingly, Rogers' submitted repair estimate is the "itemized documentation of a specific dispute as to the amount of Loss, identifying separately each item being disputed."

### i. State Farm Changes its Position for Denying Appraisal.

State Farm made its determination that it would deny appraisal and then searched for supporting reasons for the denial. This backwards approach to assessing a claim is bad faith. Rogers initially demanded appraisal prior to retaining an attorney. State Farm responded to the appraisal demand on November 27, 2023. (Remick Supp. Aff. Ex. 13). State Farm provided an entire paragraph outlining that it understood the dispute:

> [w]e received a copy of the estimate from Insurance Adjusting Services West Penn on June 14, 2023 in th amount of $214,871.20, which establishes the dispute for this claim, and the differences are due to the following: Complete removal and replacement of the dwelling and other structure roof shingles and roof component items, complete removal and replacement of siding on the other structure, and interior damages vs. partial repairs for removal and replacement of 4.33 SQ laminate shingles, 62 LF of ridge cap, 40 LF of aluminum ridge vent, and 496 SF tarp on the dwelling, removal and replacement of 10 LF of hip/ridge cap on the other structure, removal and

> replacement of 22 SF of siding and detach and reset of 42 LF of detach & reset gutter / downspout on the other structure covered in the State Farm estimate. These items present a question of coverage under the Policy.

(*Id.*)

Accordingly, State Farm received the detailed repair estimate and was able to identify the dispute and even recapped it in a letter. Yet, in the current Motion, State Farm now contends the dispute is not defined and therefore State Farm is not obligated to participate in appraisal. This argument is likely sanctionable at this point, but at the very least is completely debunked by State Farm's own detailed confirmation of its understanding of the dispute.

Rogers demanded appraisal through retained counsel on March 18, 2024. (Remick Aff. Ex. 7). State Farm responded to the demand on May 29, 2024. (Remick Aff. Ex. 8). State Farm disagreed to proceed with appraisal on the interior of the Property because State Farm did not agree that the storm caused damage to the interior of the Property. Rogers provided a response on May 30, 2024. (Remick Supp. Aff. Ex. 14). Rogers pointed out that the claim is all one claim and there is no support for considering interior as a separate claim from exterior damage and there is no support or reasoning for appraising the exterior but excluding any damage to the interior. (*Id.*) Rogers also provided supporting caselaw on appraisal. (*Id.*) State Farm did not change its position and the parties proceeded toward the current Motion.

State Farm accuses Rogers of failing to respond to its June 17, 2024, letter in which State Farm falsely contends that the dispute is not fully identified and goes on to state that Rogers simply proceeded with a Motion to Compel Appraisal rather than addressing the

issue. This is a disingenuous characterization of events on many levels. Primarily, State Farm already knows the dispute and State Farm raised this contention for the first time *after* the Motion to Compel was already scheduled to be filed just four days later.

On May 31, 2024, the Parties submitted a Rule 26(f) report which identified Rogers' intention to proceed with a Motion to Compel Appraisal. (Doc. 8). The Parties then had an email exchange with the Court on June 5, 2024, setting the timeline for submitting the Motion, which Rogers voluntarily pushed back an additional week such that State Farm's Response would not land on the Fourth of July week. (Remick Supp. Aff. Ex. 15). It was only after Rogers identified that it would bring a Motion to Compel Appraisal and set an agreeable timeline for the Motion submissions that State Farm issued a letter on June 17, 2024. (Remick Aff. Ex. 9). In this letter, State Farm, for the first time, mentioned that it contended the detailed repair estimate was not sufficient to trigger appraisal.

State Farm disingenuously stated in its Response brief that it requested a more detailed definition of the dispute but that "Plaintiff's counsel has failed to provide a response to this specific inquiry, or otherwise respond other than with the filing of the pending motion to compel." (Doc 13 at 4). Rogers did proceed with filing the Motion to Compel Appraisal on June 21, 2024, as the Parties and the Court established. State Farm attempted to change its position only four days prior to the already scheduled motion submission. State Farm then represented to this Court that Rogers failed to respond to State Farm's issue with appraisal as though Rogers was simply failing to cooperate or communicate with State Farm. State Farm's depiction that it requested information and

that Rogers refused to address it is deceptive, disingenuous, and contrary to State Farm's previous letter stating its understanding of the dispute.

Overall, Rogers properly demanded appraisal. State Farm denied it because State Farm disagreed that the storm caused all the damage Rogers claimed. This is not a legal basis to deny appraisal. Accordingly, State Farm changed its reason for denying appraisal just four days prior to the jointly scheduled timeline for Rogers to submit the Motion to Compel. Unfortunately for State Farm, its newly chosen reason to deny the claim is completely baseless and State Farm already acknowledged such when it accepted the 197 line item repair and recapped the dispute in a prior letter. State Farm clearly decided to deny appraisal by any means necessary and then invented different reasons for the denial after the fact. However, Rogers properly demanded appraisal and satisfied all requirements for doing so. Accordingly, this matter must proceed to appraisal.

## II. ROGERS SEEKS APPRAISAL OF THE AMOUNT OF LOSS AS PROVIDED FOR BY THE POLICY.

The term "amount of Loss" has been extensively analyzed and interpreted by Ohio courts as well as other courts across the country. The term "amount of Loss" includes an assessment of "how much damage the [subject storm] caused, what repairs are necessary to repair the damage caused by the storm, and how much those repairs will cost." (Remick Aff. Ex. 10 and 11, see Remick Aff. Ex 12, 13, 1, and 2, see also *Westview Vill. v. State Farm Fire & Cas. Co.*, No. 1:22-CV-0549, 2022 WL 3584263 (N.D. Ohio Aug. 22, 2022), *Stonebridge at Golf Vill. Squares Condo. Ass'n v. Phoenix Ins. Co.*, No. 2:21-CV-4950, 2022 WL 7178548 (S.D. Ohio Sept. 22, 2022), *Eagle Highland Owners Ass'n v. State Farm*

*Fire & Cas. Co.*, No. 3:23-CV-19, 2023 WL 8598329 (S.D. Ohio Dec. 12, 2023), *Rsrvs. at Beavercreek Condo. Ass'n v. State Farm Fire & Cas. Co.*, No. 3:23-CV-00098, 2023 WL 9183683 (S.D. Ohio Dec. 15, 2023), and *Hunters Glen Condo. Ass'n v. State Farm Fire & Cas. Co.*, No. 3:23-CV-77, 2024 WL 1990875 (S.D. Ohio May 6, 2024). All of the above-referenced cases analyze the exact same operative phrase of the respective policies — the "amount of Loss" — and in all of the above-referenced cases, the Court acknowledged that coverage issues are precluded from consideration by the appraisal panel and the panel's authority is limited to determining the "amount of Loss" as granted by the Policy.

The prevailing determination of what a coverage question is — such that it should be precluded from the appraisal panel — is that a coverage question is a legal interpretation question that a Court could answer at declaratory judgment. As the Northern District of Ohio explained while ordering the parties to proceed with appraisal:

> This Court is not persuaded by cases deciding that the extent of covered damage is a coverage question. ***Coverage issues are contract-interpretation issues.*** Accordingly, courts decide legal questions about "categories of coverage." But the extent of damage that a covered event caused presents a factual question, not a legal one.

*Westview Vill. v. State Farm Fire & Cas. Co.*, No. 1:22-CV-0549, 2022 WL 3584263, at *4 (N.D. Ohio Aug. 22, 2022). (Emphasis added).1

---

1 All of the cases, including *Stonebridge* had appraisal provision that permitted appraisal when the parties disagreed on the "amount of loss." In the specific quote, the Court used the term "extent" of loss because the Ohio Supreme Court in *saba*, which is still the controlling Supreme Court case on appraisal in Ohio, analyzed a case permitting appraisal of the "amount of Loss' and stated that the purpose was to provide a "a plain, speedy, inexpensive and just determination of the ***extent*** of the loss." Saba v. Homeland Ins. Co. of Am., 159 Ohio St. 237, 240, 112 N.E.2d 1, 3 (1953) ("emphasis added").

The Southern District of Ohio similarly held:

> But where, as here, an appraisal provision is otherwise silent as to how an appraiser should measure the "extent" of a "loss," courts in a variety of jurisdictions—***including Ohio—have interpreted the process to "require [ ]" (or simply permit) a causation analysis***.
>
> […]
>
> That is what [Plaintiff] seeks here. As it notes, the real issue at play is *not* what constitutes a "covered event" under the Policy, but rather "the *extent* of damage that a covered event"—*i.e.*, the September Storm—actually "caused."

*Stonebridge at Golf Vill. Squares Condo. Ass'n v. Phoenix Ins. Co.*, No. 2:21-CV-4950, 2022 WL 7178548, at *2 - *3 (S.D. Ohio Sept. 22, 2022).

The Court went on to reject State Farm's current argument which is that determining what items the storm damaged is determining what items are ***covered*** and would therefore be a coverage question. The Courts determined that anything that does not require a contract interpretation is actually a determination of the amount of Loss best resolved by appraisal.

> [The insurance company's] position that "the extent of covered damage," is, in itself, a "coverage question" which must be resolved by this Court *before* an appraisal occurs fares no better. This, again, is for numerous reasons. For one, it misconstrues the "coverage question[s]" that courts generally resolve. As the *Westview* court aptly put, "[c]overage issues are contract-interpretation issues." *Westview*, 2022 WL 3584263 at *4. That is, they are "legal questions" which require courts to determine a given policy's "categories of coverage." *Id.* Here, there is simply no dispute regarding the types of "coverage" the Policy provides. Windstorm and hail damage unambiguously fall within its scope, and neither party argues otherwise. Nor is there any dispute "that a storm damaged [Plaintiff's] covered property." *Id.*; (Pl.'s Ex. 3, ECF No. 17-4) (noting [insurance company's] estimate that [Plaintiff] suffered $4,157.04 in wind damage). ***There is, however, clearly a disagreement as to what damage, specifically, that storm caused. That is a***

> *factual inquiry, not a legal one. And it is a question that, in this Court's view, is best left for a full, first-hand appraisal, rather than a second-hand judicial review.*

*Stonebridge at Golf Vill. Squares Condo. Ass'n v. Phoenix Ins. Co.*, No. 2:21-CV-4950, 2022 WL 7178548, at *3 (S.D. Ohio Sept. 22, 2022). (Emphasis added).

In the current matter Rogers requests a determination of the amount of Loss. State Farm makes note that the Policy prohibits appraisal from determining coverage issues, facts not associated with the amount of Loss, and class actions. Rogers does not wish for the appraisal panel to determine any legal coverage issue, is not part of a class action, and does not request the appraisal panel to determine other facts that are not part of the amount of Loss. Rogers requests an appraisal of the amount of Loss, fitting the definition and reasoning of the above-referenced court matters.

The cases referenced herein also only permitted appraisal to determine the "amount of Loss." While State Farm points out that the language of the current Policy is not identical to the countless cases State Farm has already been compelled to participate in appraisal, State Farm still fails to provide any analysis as to how these on-point cases applied any standard or analysis that would not apply here. Rather, these cases all acknowledge that appraisal cannot determine coverage questions and provide extensive analysis on the issue of what a coverage question is or is not. All of the cases only permit the appraisal panel to determine the amount of Loss, the same grant of authority that the current Policy provides for Rogers.

State Farm presents some district court cases which are not on point. For example, *McPheeters* was a case where the parties agreed on the amount of Loss for a car claim but

disputed whether the Policy provided coverage for the tax on the replacement car, a legal question that was resolved through a Policy interpretation analysis. *McPheeters v. United Servs. Auto. Ass'n*, 549 F. Supp. 3d 737, 743 (S.D. Ohio 2021) ("Plaintiff does not dispute USAA's calculation of the adjusted vehicle value ($6,346.00) or USAA's calculated amount of sales tax ($444.22). Instead, Plaintiff disputes whether the Policy requires payment of sales tax." (internal citations omitted)). In *Leonard*, the dispute was only about whether replacement material "matched" or not and the Court determined the issue was a coverage issue. (Doc. 15-3). While Plaintiff disagrees with this holding, *Leonard* did not preclude the appraisal panel from determining how much damage the storm caused, which is at issue in the current matter.

The two-page order in *Schneider* did not provide any analysis and is rather unhelpful to assess the current matter. (Doc. 15-5). However, similar to *Mika* (Doc 15-4), district court seems to apply a standard that appraisal is limited to only the price of the items that the insurance company agrees is damage and the appraisal panel cannot consider any damage outside of the insurer's scope of repairs. Nationally, this is an extreme minority view of appraisal among the different state interpretations of what constitutes a coverage issue rather than a factual amount of Loss issue.[2] This interpretation is contrary to the

---

2 If there is any questions as to what the term "amount of Loss" means — whether is provides for a determination of all factual issues necessary to determine the entire amount of Loss or is limited specifically to the cost of items that State Farm unilaterally determines are part of the Loss — that ambiguity must be resolved in favor of the insured. *Lager v. Miller-Gonzalez*, 2008-Ohio-4838, ¶ 16, 120 Ohio St. 3d 47, 49, 896 N.E.2d 666, 669 ("ambiguous provisions in an insurance policy must be construed strictly against the insurer and liberally in favor of the insured").

directive of the only controlling Ohio Supreme Court case which takes an affirmative and supportive view of appraisal and holds that the "insured has the right to have the amount of the loss settled as provided in the arbitration clause of his policy ***even though insurer denies liability*** or refuses to participate in the arbitration." *Saba v. Homeland Ins. Co. of Am.*, 159 Ohio St. 237, 240–41, 112 N.E.2d 1, 3 (1953). (Emphasis added). As other states have firmly held, when a party attempts to narrow appraisal to only consider pricing without permitting determining the extent of damage caused, such "interpretation would render appraisal clauses inoperative in most situations, and that result is in direct conflict with the public policy behind the appraisal process and the fact that we have repeatedly encouraged its use." *Quade v. Secura Ins.*, 814 N.W.2d 703, 707 (Minn. 2012).

This is why the many cases Rogers has cited (8 Ohio Federal Court cases and 2 Court of Common Pleas cases) compelled appraisal to include assessment of more than just the small amount of damage the insurance company unilaterally identifies as damage. This matter should be compelled to appraisal, the same as the majority of caselaw in Ohio and the extreme majority of caselaw across the country.

### III. APPRAISAL IS THE MOST ACCURATE AND EFFICIENT RESOLUTION OF CLAIMS.

Appraisal is designed to be the "plain, speedy, inexpensive and just determination of the extent of the loss" that permits insureds a prompt resolution of the claim "without the expense and delay incident to litigation" and it is "a valuable right which he should not be denied." *Id*. Appraisal creates a two-step process that fully resolves the majority of insurance disputes — disputes about what was damaged, what repairs are necessary, and

how much repairs will cost — without the need for lengthy discovery and a trial. See, *Westview Village* at *4 ("Courts that allow appraisal to determine causation typically permit insurers to contest coverage and assert defenses after appraisers set the amount of loss. This approach agrees with the parties' agreement that '[i]f there is an appraisal, [Defendant] will still retain [its] right to deny the claim.'").

Accordingly, the matter should proceed to appraisal to resolve the fact question of the amount of Loss and then proceed to the Court to resolve the legal questions of coverage. Other litigation processes, specifically discovery, are not needed for amount of Loss insurance disputes. Under the terms of the Policy the Parties are already required to share pertinent information about the property and the Loss as part of the insurance company's loss investigation. Further, the primary piece of evidence for a Loss is the property itself, which the Policy requires the insured preserve and exhibit whenever necessary.

Appraisal addresses the questions of fact regarding the amount of loss. Once those facts are established, the Court can then resolve the remaining issues as a matter of law. Appraisal, a first-hand inspection performed by knowledgeable construction experts, is the best method for assessing factual issues. The appraisal panel can inspect, view from an infinite possibility of different angles, test for moisture, or even remove portions of a wall or covering to fully assess the loss.

However, the construction experts that make up an appraisal panel are not in the best position to interpret an insurance contract and applicable law to determine what categories of loss are covered or not. This is why appraisal panels are precluded from determining coverage. The Court is in the best position to use its legal expertise to

determine the effects of the Policy and applicable law to determine the "categories of coverage."

State Farm accurately identified in its Response that the appraisal panel should only determine factual issues of the amount of Loss and not make coverage determinations. For any coverage issues that State Farm contends may apply, such as State Farm's often-raised contention that its Policy does not provide coverage for repairs that result in a reasonably comparable appearance despite Ohio Amin. Code 3901-1-54 requiring exactly that, State Farm should request the appraisal panel list that category of coverage separately. If the appraisal panel awards anything for the category of providing a reasonably comparable appearance, State Farm can then refuse to pay that category and contend it is not covered under the Policy. The parties will then at least know how much is at stake for that dispute and can attempt to negotiate a resolution or determine if the dispute is significant enough to warrant further dispute. If the parties continue to dispute the coverage for the awarded category, the parties can bring a Motion for Declaratory/Summary Judgment. The court will be able to resolve the remaining dispute by interpreting the Policy and applying Ohio law to determine if that category should be included or excluded from a final judgment.

State Farm is well aware of how an insurance claim should proceed and how a vast majority of claims involving any insurance other than State Farm do proceed. The matter should first proceed to appraisal to determine "how much damage the [subject storm] caused, what repairs are necessary to repair the damage caused by the storm, and how much those repairs will cost." State Farm will retain its ability to deny coverage following the appraisal award. The parties can then proceed with Motions before the court to determine

the "categories of coverage" which are legal questions of policy-interpretation. Accordingly, appraisal is appropriate at this time and Rogers respectfully requests this Court order the Parties to participate in appraisal.

### IV. THIS MATTER SHOULD BE STAYED WHILE THE PARTIES PROCEED WITH APPRAISAL.

"[A]ppraisal is a process that is generally intended to take place before suit is filed." *Stonebridge at Golf Vill. Squares Condo. Ass'n v. Phoenix Ins. Co.*, No. 2:21-CV-4950, 2022 WL 7178548, at *4 (S.D. Ohio Sept. 22, 2022). Accordingly, this matter should proceed to appraisal before proceeding with litigation. Appraisal may resolve the claim entirely or at least narrow the issues to consider for any further litigation. State Farm did not argue that the matter should not be stayed in the event that appraisal is ordered. Accordingly, this matter should be stayed until the appraisal is completed.

### V. ROGERS REQUESTS ORAL ARGUMENT.

The Court would benefit from an open discussion of the topics and issues in this matter. Appraisal is a process that takes place outside of Court. Accordingly, there is not a lot of case law on how appraisals work. However, appraisal is extremely important for all policyholders as it provides a way for insureds to dispute the unilateral determinations of the insurance company without having to participate in a costly war of attrition through legal fees, which the insurance company will always win. Accordingly, Rogers requests oral argument in this matter.

# **CONCLUSION**

For the reasons set forth above, the Rogers respectfully asks the Court for the following relief:

1. An order from the Court compelling the disputed amount of loss be established by appraisal at the soonest time the panel is available;

2. That litigation in the current matter be stayed until the completion of an appraisal which will potentially resolve this matter in its entirety; and

3. Such further relief as the Court deems just and equitable.

Respectfully submitted,

Date: June 26, 2024

*/s/ Anthony A. Remick*
SMITH JADIN JOHNSON, PLLC
Anthony A. Remick
Ohio Bar No.: 100812
Timothy D. Johnson
Ohio Bar No. 98515
470 Broad Street, Suite# 725
Columbus, Ohio 43215
Telephone: (952) 388-0289
Facsimile: (612) 235-7927
aremick@sjjlawfirm.com
tjohnson@sjjlawfirm.com
**ATTORNEYS FOR PLAINTIFF**

# CERTIFICATE OF SERVICE

The undersigned certifies that on this 26th day of July, 2024, a copy of the foregoing Reply Memorandum of Law in Support of Its Motion to Compel Appraisal and Stay Litigation was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record:

Melanie Norris (0073506)
Dinsmore & Shohl LLP
2100 Market Street
Wheeling, WV 26003
Melanie.norris@dinsmore.com
Attorney for Defendant


Kelli J. Amador (0095550)
Dinsmore & Shohl LLP
191 W. Nationwide Blvd., Suite 200
Columbus, OH 43215
E-mail: kelli.amador@dinsmore.com
Attorney for Defendant

               */s/ Anthony A. Remick*
               Anthony A. Remick (100813)