**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

Sharon Marie Rogers,

    Plaintiff,

        v.

State Farm Fire and Casualty Co.,

    Defendant.

Case No. 1:24-cv-148

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court on Plaintiff's Motion to Compel Appraisal and Stay Litigation. (Docs. 9, 11, 12).[1] Defendant has filed a memorandum in opposition (Doc. 13) and Plaintiff has filed a reply (Docs. 16, 17). Both parties have filed Notices of Supplemental Authority. (Docs. 18, 19). Plaintiff's Motion will be GRANTED.

### I. BACKGROUND

Defendant State Farm Fire and Casualty Company ("State Farm") issued a homeowners insurance policy to Plaintiff Sharon Marie Rogers ("Rogers"). (Doc. 11, Homeowners Policy, PAGEID 49–104). This policy was in effect on the loss date of March 25, 2023. (*Id.* PAGEID 49, 99). State Farm determined the amount of loss to be $3,490.68, which was less than Rogers' deductible. (*Id.* PAGEID 105–114; Answer, Doc. 6 (¶10)). Rogers retained a public adjuster, Insurance Adjusting Services West Penn; West Penn determined the amount of loss to be $214,871.20. (Doc. 11 PAGEID 115–136).

---

[1] Plaintiff requests oral argument. (Doc. 9 PAGEID 38 CAPTION; Doc. 12 PAGEID 175 CAPTION, PAGEID 180 (¶ 13); Doc. 16 PAGEID 253 CAPTION, PAGEID 268). The Court does not deem oral argument essential to the fair resolution of this matter, however, and thus denies Plaintiff's request. *See* S.D. Ohio Civ. R. 7.1(b)(2).

On November 20, 2023, West Penn contacted State Farm and "evok[ed] the Appraisal clause of the Insured's policy[.]" (Doc. 11, Letter from J. Mrozek to HOME CLMS-FIRECLAIMS, PAGEID 137–138). Trial counsel likewise emailed State Farm (on March 18, 2024) and demanded appraisal on Rogers' behalf. (*Id.*, Letter from A. Remick to D. McKenzie, PAGEID 139–140). He also advised that a civil action would be filed to comply with the one-year limitations period. (*Id.*). Rogers' Complaint against State Farm was filed the next day, March 19, 2024. (*See* Doc. 1).

## II.     LAW & ANALYSIS

The purpose of an appraisal "is to provide a plain, speedy, inexpensive and just determination of the <u>extent of the loss</u>[.]" *Saba v. Homeland Ins. Co.*, 159 Ohio St. 237, 112 N.E.2d 1, 3 (Ohio 1953) (quoting 45 C.J.S. *Insurance* § 1110)[2] (underline emphasis added); *Westview Vill. v. State Farm Fire & Cas. Co.*, No. 1:22-cv-0549, 2022 WL 3584263, at *2 (N.D. Ohio Aug. 22, 2022) (Gwin, J.). "The appraisal provisions are an integral part of the body of each policy precisely the same as every other paragraph[,]"[3] and are enforceable in Ohio as "any other bargained-for contractual right[.]"[4] Here, the appraisal clause reads (in part):

> If *you* and *we* fail to agree on the <u>amount of loss</u>, either party can demand that the amount of loss be set by appraisal.

(Doc. 11 PAGEID 73 (¶4) (bold and italics emphasis in original, underline emphasis added)). The policy does not define "amount of loss". Appraisal, however, "is <u>only</u> available to determine <u>the amount of the loss</u> of each item in dispute." (*Id.* PAGEID 74

---

[2] This language quoted in *Saba* is currently found at 46A C.J.S. *Insurance Appraisal and Arbitration, in General* § 1900 (2018).

[3] *Saba*, 112 N.E.2d at 4.

[4] *Stonebridge at Golf Vill. Squares Condo. Ass'n v. Phoenix Ins. Co.*, No. 2:21-cv-4950, 2022 WL 7178548, at *2 (S.D. Ohio Sept. 22, 2022) (Sargus, J.) (citing *Westview Vill.* (citing *Saba*)).

(¶ 4(h)) (underline emphasis added)).  The appraisers (and the umpire)[5] have no authority to decide questions of law or questions of coverage.  (*Id.* PAGEID 74 (¶ 4(h))).[6]  They also have no authority to decide "any other questions of fact".  (Doc. 11 PAGEID 74 (¶ 4(h))).

The parties agree that: a storm is a covered cause of loss[7]; and the March 25, 2023 storm caused loss to Rogers' dwelling.  Still, State Farm won't honor Rogers' demand for appraisal for two reasons.  First, she did not comply with the condition precedent to provide to State Farm (at least ten days prior) "written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed." (*See id.* PAGEID 74 (¶ 4(h))).  Instead, Rogers only provided "an estimate from a public adjuster, which references the global monetary estimate for the combined interior and exterior damages, and fails to specifically identify what items, if any, are being disputed." (Doc. 15 PAGEID 222–224).  Second, State Farm contends that the "amount of loss" to be determined by appraisal "include[s] only the pricing of the repairs [it] deem[s] [ a]re covered," not the damages that Gentry, relying on West Penn's estimate, thinks *should* be covered.[8]  *See Udom v. State Farm Fire & Cas. Ins. Co.*, No. 3:23-cv-126, 2024 WL 3329859, at *1 (S.D. Ohio June 4, 2024) (Silvain, M.J.).

---

[5] As part of the appraisal process, each party selects "a competent, disinterested appraiser[.]" (Doc. 11 PAGEID 73 (¶ 4(a))).  "If the two appraisers fail to agree upon the amount of the loss . . . they will select a competent, disinterested umpire and will submit their differences to the umpire." (*Id.* (¶4(c))).

[6] This is consistent with Ohio caselaw providing that "insurance policy coverage disputes are legal questions for the Court."  *See, e.g., Prakash v. Allstate Ins. Co.*, No. 5:20-cv-00524, 2021 WL 37698, at *2 & n.24 (N.D. Ohio Jan. 5, 2021) (Gwin, J.).

[7] (Doc. 11, Homeowners Policy, PAGEID 64 (windstorm or hail)).

[8] (Doc. 15 PAGEID 225–231).

3

Neither reason persuades.

As noted, West Penn demanded appraisal on Gentry's behalf on November 20, 2023.  Included as part of the demand was its <u>197</u> line-item repair estimate.  (*See* Doc. 11 PAGEID 115–136).  A Claim Specialist promptly responded on behalf of State Farm a week later.  Her correspondence states in relevant part:

> We received a copy of the estimate from Insurance Adjusting Services West Penn on June 14,2023, in the amount of $214,871.20, <u>which establishes the dispute for this claim, and the differences are due to the following</u>: Complete removal and replacement of the dwelling and other structure roof shingles and roof component items, complete removal and replacement of siding on the other structure and interior damages vs. partial repairs for removal and replacement of 4.33 SQ laminate shingles, 62 LF of ridge cap, 40 LF of aluminum ridge vent, and 496 SF tarp on the dwelling, removal and replacement of 10 LF of hip/ ridge cap on the other structure, removal and replacement of 22 SF of siding and detach and reset of 42 LF of detach & reset gutter/ downspout on the other structure covered in the State Farm estimate.  <u>These items present a question of coverage under the policy.</u>
>
> <u>The appraisal provision in the policy is to resolve differences in the price of repair which State Farm determined were covered</u>.  The provided estimate presents a dispute in coverage under the policy and items not covered under this claim.  <u>Appraisal cannot be used to resolve disputes regarding coverage provided by the contract.</u>  Therefore, appraisal would not be appropriate as outlines above; the appraisers and umpire have no authority to decide questions of coverage.

(Doc. 17, Letter (dated November 27, 2023) from D. McKenzie to Insurance Adjusting Services of West Penn, PAGEID 274–277 (underline emphasis added)).  Nowhere does State Farm's agent state that Gentry's *documentation* was lacking under the policy. In fact, Claim Specialist McKenzie noted that West Penn's estimate "establishe[d] the dispute for this claim." State Farm cannot reverse course now that the parties are in litigation.

4

The fundamental question here is the measure of authority given to the appraisers (and the umpire) to decide the "amount of loss". True, "[s]eparating coverage issues from loss issues is not a simple task." *Westview Vill.*, 2022 WL 3584263, at *2 (quoting *Prakash v. Allstate Ins. Co.*, No. 5:20-cv-524, at *3 (N.D. Ohio Jan. 5, 2021) (Gwin, J.)); see *Udom*, 2024 WL 3329859, at *2 (quoting *Westview Vill.*)). It's made easier, though, by keeping in mind that whether the peril *caused* the loss is different from whether the policy *covers* the loss.[9] See *Stonebridge at Golf Village Squares Condo. Ass'n v. Phoenix Ins. Co.*, No. 2:21-cv-4950, 2022 WL 7178548, at *3 (S.D. Ohio Sept. 22, 2022) (Sargus, J.).

"Parties sometimes agree to a policy that prohibits appraisers from answering causation question when setting the amount of loss." *Westview Vill.*, 2022 WL 3584263, at *2 (citation omitted). But when the appraisal clause says nothing about causation, "Ohio courts' construction of 'amount of loss' controls." *Id.* Ohio courts (and other jurisdictions) "have interpreted the process to require (or simply permit) a causation analysis." *Stonebridge*, 2022 WL 7178548, at *2 (cleaned up); see *Eagle Highland Owners Ass'n v. State Farm Fire & Cas. Co.*, No. 3:23-cv-19, 2023 WL 8598329, at *1 (S.D. Ohio Dec. 12, 2023) (Newman, J.) (citing *Stonebridge*).

State Farm counters that the appraisal clause *does* address causation in that it prohibits the appraisers (and the umpire) from deciding "any other questions of fact." The Court disagrees. State Farm, the drafter of the policy, included specific language about questions of "law" and questions of "coverage". If it had intended to include questions of "causation", it could (and should) have done so. To allow a catch-all phrase to incorporate

---

[9] See *Westview Vill.*, 2022 WL 3584263, at *4 (This Court is not persuaded by cases deciding that the extent of covered damage is a coverage question. . . . [C]ourts decide legal question about 'categories of coverage.' But the extent of damage that a covered event caused presents a factual question, not a legal one.") (citations omitted) (underline emphasis added).

5

causation is at odds with Ohio caselaw to date and, equally important, undermines the purpose behind appraisal.[10]

### III. CONCLUSION

1. Plaintiff's Motion to Compel Appraisal (Doc. 9) is **GRANTED**.

2. Defendant is **ORDERED** to proceed with the appraisal process as set forth in the policy, at the soonest time possible. The appraisals should separately calculate and identify disputed costs—to include both exterior and interior damage—so the Court can either include or exclude them once it has determined whether the policy provides coverage for them.

3. This civil action is **STAYED** until a full appraisal occurs. The parties shall jointly file a short, one-page status report every 30 days until this appraisal is complete. Upon its completion, the parties shall promptly notify the Court as to whether any live dispute remains in this case.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court

---

[10] The undersigned's ruling is not at odds with the supplemental authority submitted by State Farm. (Doc. 18-1). Our colleague Judge Hopkins very recently declined to order appraisal to assess the amount of loss caused by a storm. *See Olson v. State Farm Fire & Cas. Co.*, No. 1:23-cv-189, 2024 WL 4343033 (S.D. Ohio Sept. 30, 2024). He explained that "Olson may in the future be, but is not right now entitled to the appraisal he so desperately seeks—at least not until the Court rules on the proper construction of the language in the policy against the backdrop of the Ohio Administrative Code [3901-1-54(I)(1)(b)]. *Id.* at *1. "[T]he parties here are disputing whether Olson is entitled to a full roof replacement based on whether the replacement shingles will match—or in the words of the regulation whether the replacement shingles will achieve a reasonably comparable appearance. [ T]his is ultimately a question of law (calling for an interpretation of what constitutes compliance with the Ohio Administrative Code[.]" *Id.* at *4.